**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:21-CV-01106-RMR-NRN

MIGHTY ARGO CABLE CAR, LLC,
a Colorado limited liability company

        Plaintiff,

v.

TRIVECTA CAPITAL GROUP, INC, ARGO MILL SL LLC,
FIRST TITLE, INC., and SANDRA BACON; an individual; CHRISHEENA SHANTE MCGEE
A.K.A. CHRISTINA MARIUS, an individual.

        Defendants.

---

**MIGHTY ARGO'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

        Plaintiff Mighty Argo Cable Car, LLC ("Mighty Argo") moves for partial summary judgment against Defendants First Title, Inc. ("First Title"), Sandra Bacon ("Bacon"), and Chrisheena McGee a/k/a Christina Marius ("McGee," together with First Title and Bacon, the "First Title Defendants") on Mighty Argo's first and sixth claims for relief. In support of its Motion for Partial Summary Judgment, Mighty Argo states as follows:

**CERTIFICATE OF COMPLIANCE WITH D.C.COLO.LCIVR 7.1**

        Counsel for Mighty Argo has conferred with counsel for the First Title Defendants who opposes the relief requested herein.

## I.  INTRODUCTION

        Defendants Bacon and McGee utilized First Title to defraud Mighty Argo out of $4.3 million. Under a written Escrow Agreement, First Title was required to hold $4.5 million

belonging to Mighty Argo. Instead of holding the funds in escrow, Defendants Bacon, McGee and First Title transferred Mighty Argo's funds for their own benefit and gain. Mighty Argo has only recovered $143,467.03 of its $4.5 million.

Mighty Argo raised the $4.5 million through 35 individual investors. On a personal level, many of those investors were and are friends, family members, and members of the Idaho Springs community who believed in Mighty Argo. Mighty Argo was forced to tell those people that their funds have been stolen.

The First Title Defendants have largely failed to participate in this proceeding. The First Title Defendants failed to timely respond to Mighty Argo's First and Second Sets of Discovery Requests, including Requests for Admissions ("RFAs"). The RFAs are thus deemed "admitted" and the matters therein are "conclusively established" under Fed. R. Civ. P. 36(a)(3) and (b).

Following a discovery dispute hearing on First Title's non-compliance, First Title was ordered to respond to the discovery requests. It was "placed on notice that sanctions, including potentially default judgment might be entered if First Title fails to comply with [the Court's] order." To date, First Title has not supplemented its responses.

While these Rule 36 "deemed admissions" increase the quantum of evidence supporting Mighty Argo's Motion, they are cumulative. Without them, there is still overwhelming evidence to warrant granting summary judgment. The record, when taken as a whole, leads to no other conclusion than that the First Title Defendants committed fraud and First Title breached the Escrow Agreement.

## II.  STATEMENT OF UNDISPUTED MATERIAL FACTS

### *Background*

1.     To complement the historic Argo Mill and Tunnel in Idaho Springs, Colorado, Mighty Argo sought to construct a gondola up Rosa Gulch to feature pedestrian plazas, viewing decks, food and beverage options, and an observation trestle. (Declaration of Mary Jane Loevlie ("Loevlie Decl."), attached hereto as <u>Exhibit 1</u>, ¶1). Defendant Trivecta Capital Group, Inc. ("Trivecta") agreed to finance the construction. (*Id.,* ¶2).

2.     Mighty Argo and Trivecta entered a Term Sheet whereby Mighty Argo would provide $4.5 million of its own money, and Trivecta would provide a $32 million-dollar loan to Mighty Argo to construct the gondola. (*Id*.). To facilitate this deal, Trivecta arranged for Mighty Argo to place $4.5 million in escrow with the First Title Defendants. (*Id.*).

### *The Escrow Agreement, Funding, and Unauthorized Transfers*

3.     On or about August 19, 2020, Mighty Argo entered into an Escrow Agreement with First Title and Trivecta. (Escrow Agreement, <u>Exhibit 2</u>, MA000184-195).

4.     The Escrow Agreement required Mighty Argo to deposit $4.5 million (the "Funds") into escrow with First Title. (<u>Exhibit 2</u>, MA000185, §(B); and Schedule 1 thereto).

5.     First Title was required to "hold the Escrowed Funds in escrow . . ." (*Id.,* §3.2).

6.     First Title was required to "maintain and preserve" the Funds. (*Id.,* §5.1).

7.     First Title was required to indemnify and hold harmless Mighty Argo for all costs due to First Title's failure to act in accordance with the Escrow Agreement. (*Id.,* §12).

8.     First Title was required to release the Funds upon request from Trivecta or Mighty Argo. (*Id.*, §4).

9.     From August 19, 2020 to November 4, 2020, Mighty Argo deposited no less than $4,500,000 into First Title's escrow accounts at Navy Federal Credit Union. (Wire Confirmations, <u>Exhibit 3</u>, MA000198-205).

10.    Mighty Argo deposited the following amounts into First Title's escrow accounts:

| | |
|---|---|
| August 19, 2020 | $1,500,000 |
| September 3, 2020 | $700,000 |
| September 25, 2020 | $350,000 |
| October 2, 2020 | $200,000 |
| October 9, 2020 | $350,000 |
| October 23, 2020 | $500,000 |
| October 30, 2020 | $400,000 |
| November 4, 2020 | $500,000 |
| Total | $4,500,000 |

(*Id.*).

11.    First Title confirmed receipt of the Funds on November 4, 2020. (E-mail from S. Bacon, <u>Exhibit 4</u>, MA000208). The First Title Defendants communicated to Mighty Argo through Trivecta. (Loevlie Decl., ¶4). It was Trivecta who arranged for Mighty Argo to deposit the Funds into escrow with the First Title Defendants. (*Id.*) Thus, the First Title Defendants knew Mighty Argo would rely on statements they made to Trivecta. (*Id.*).

12.    Unbeknownst to Mighty Argo, the First Title Defendants began transferring money out of its escrow accounts almost immediately after Mighty Argo's first deposit. (NFCU Escrow Account Wire Transfers, <u>Exhibit 5</u>, MA000792-852).

13.    On August 24, 2020, the First Title Defendants transferred $1,000,000 to a third party called "Lendterra." (*Id.*, at MA000825). That same day Defendants transferred $200,000 to the Deyon Law Group, PLLC, the counsel who represents the First Title Defendants in this case. (*Id.,* at MA000824).

4

14.     Between August 24, 2020 and February 10, 2021, the First Title Defendants transferred no less than $4,356,532.97 of Mighty Argo's Funds out of the escrow accounts. The First Title Defendants transferred $4,252,200 via wire transfers, (*Id.,* at MA000795-796), and $104,332.97 via various checks and debits. (Loevlie Decl., ¶9). Mighty Argo secured the remaining $143,467.03 through a wire recall issued by Mighty Argo's FirstBank to Navy Federal Credit Union. (*Id.*, ¶11). This is only 3% of what was stolen; $4,356,532.97 remains with the First Title Defendants and their transferees. (*Id.*).

15.     Some of the First Title Defendants' transfers include $312,000 on September 3, 2020 to Lloyd A. Warman DBA Inflorida; $266,000 on September 21, 2020 to Momentum Title Agency LLC (Exhibit 5, at MA000827 ); $250,000 on October 27, 2020 to Harriet Nusbaum (*Id.,* at MA000828); $250,000 on December 8, 2020 to Harriet Nusbaum (*Id.,* at MA000838); $1,750,000 on December 8, 2020 to Harriet Nusbaum (*Id.,* at MA000839); and $66,700 on January 25, 2021 to Hawash Cicack & Gaston LLP. (*Id.,* at MA000841).

16.     The First Title Defendants also transferred $150,000 to Defendant Trivecta. (*Id.,* at MA000808).

17.     Every transfer was unauthorized. (Loevlie Decl., ¶10).

18.     None of the recipients were related to, or affiliated with, Mighty Argo. (*Id.*).

19.     On January 29, 2021 and February 4, 2021, Mighty Argo emailed Bacon and First Title asking for confirmation that the Funds remained in the escrow accounts. (E-mails from D. Kost, Exhibit 6, MA000943-945).

20.     As explained in section II(A) below, the First Title Defendants concealed the transfers and the location of the Funds. After the money was gone, they altered a bank statement

to show they possessed the Funds; they represented that the Funds were "safe in [their] escrow account"; and falsely stated the funds would be returned expeditiously. (Loevlie Decl., ¶¶ 18-21).

21.     On February 15, 2021, Trivecta and Mighty Argo requested the First Title Defendants to return the Funds to Mighty Argo by noon on February 16, 2021. (E-mail from J. Matthiesen, Exhibit 7 at TRIVECTA000479).

22.     When the funds were not returned, Mighty Argo again demanded return of the Funds on February 16, 2021. (*Id.*, at TRIVECTA000478).

23.     On February 17, 2021, Defendant McGee responded stating:

"We truly apologize for the delay in funding. The amount we received requires extra clearance as we are funding over $500m in projects including veteran housing. We received your request for return of your escrow yesterday. We sent the request to our attorney and he will prepare release documents for you to sign. We are dealing with power outages and our attorney was affected by it yesterday. He will send an email confirming the sending of documents to be sent electronically for signature and will authorize return of escrow. The funds your group deposited was in connection to a credit facility of $50m do [sic] Trivecta; therefore, both parties will need to sign the release form."

(*Id.*)

24.     When McGee wrote this email, she knew that she, Bacon and First Title had already absconded with 97% of Mighty Argo's Funds. (Exhibit 5, at MA000795-796).

25.     On February 22, 2021, Trivecta and Mighty Argo again demanded immediate release of the Funds. (Letter from Mighty Argo and Trivecta, Exhibit 8, MA000207).

26.     To date, the First Title Defendants have failed and refused to release, return, or refund the Funds to Mighty Argo. (Loevlie Decl., ¶11).

### *Discovery Issues*

27.     Mighty Argo filed its First Amended Complaint on July 2, 2021 against Trivecta, Argo Mill SL LLC, First Title, Inc., Sandra Bacon and Chrisheena McGee. (Dkt. 25).

28.     On September 23, 2021, Mighty Argo issued discovery requests to the First Title Defendants, including Requests for Admissions to Defendant McGee. (Mighty Argo's First Set of Discovery Requests to McGee, First Title, and Bacon, <u>Exhibits 9</u>, <u>10</u>, and <u>11</u>).

29.     The First Title Defendants did not timely respond by October 23, 2021. (Loevlie Decl., ¶13).

30.     Mighty Argo's counsel sought the First Title Defendants' compliance with the discovery requests on December 2, 6, 7, and 8. (*Id*.).

31.     The First Title Defendants ultimately responded to Mighty Argo's Discovery Requests and plead the 5th on every response. (Discovery Responses, <u>Exhibits 12</u>, <u>13</u>, and <u>14</u>). Mighty Argo advised there was no 5th amendment right to First Title, as a corporation, and a discovery dispute was held.

32.     On January 7, 2022, the Court ordered First Title to respond to Mighty Argo's Discovery Requests and was "placed on notice that sanctions, including potentially default judgment might be entered if First Title fails to comply with this order. Absent a good faith and meaningful effort to supplement, the Court would entertain a motion for sanctions." (Dkt. 55). First Title disregarded the Court's Order and did not supplement its Discovery Responses. (Loevlie Decl., ¶15).

33.     On December 9, 2021, Mighty Argo issued its Second Set of Discovery Requests comprising of Requests for Admissions to Defendants First Title, Bacon, and McGee. (Second Set of Discovery Requests, <u>Exhibits 15</u>, <u>16</u>, and <u>17</u>).

34.     The First Title Defendants did not timely respond by January 8, 2021. (Loevlie Decl., ¶17). These requests are deemed admitted under Rule 36. To date, the First Title Defendants have not responded to the Second Set of Discovery Requests. (*Id.*).

### III.   LEGAL STANDARD

Summary judgment is warranted where there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. F.R.C.P. 56(a). The principal purposes of summary judgment include streamlining litigation and saving needless time and expense by isolating and disposing of purely legal and factually unsupported claims and defenses. *Mitchell v. Zia Park LLC*, 842 F. Supp. 2d 1316, 1321 (D. N.M. 2012); *see also Harrison v. Wahatoyas, LLC*, 253 F.3d 552, 557 (10th Cir. 2001) (purpose of summary judgment is to determine whether there is evidence to support a party's factual claims). Where the record taken as a whole could not lead a rational trier of fact to find for the non-movant, there is no genuine issue for trial. *Ricci v. De Stefano*, 557 U.S. 557 (2009).

### IV.   ARGUMENT

**I.      First Title breached the Escrow Agreement (Claim 1 – Against First Title, Inc.).**

Under Colorado law, a claim for breach of contract requires: (1) the existence of a contract; (2) performance by the plaintiff, or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff.  *Western Distrib. Co. v. Diodosio,* 841 P.2d 1053, 1058 (Colo. 1992) (citation omitted).  Where a contract is unambiguous, it must be enforced as written.  *Relative Value Studies, Inc. v. McGraw-Hill Cos.,* 981 P.2d 687, 690 (Colo. App. 1999).  *See also Moore v. Georgeson,* 679 P.2d 1099, 1101 (Colo. App. 1983).

First Title and Mighty Argo entered into the Escrow Agreement whereby Mighty Argo would deposit the Funds with First Title. (Exhibit 2, at MA000185, §(B); and Schedule 1 thereto). First Title was required to hold and preserve the Funds in escrow and release the Funds upon request or closing. (*Id.,* §3.2 and §5.1). Mighty Argo complied with the Escrow Agreement when it deposited no less than $4.5 million into First Title's escrow accounts. (Exhibit 3).

First Title breached the Escrow Agreement almost immediately. On August 24, 2020, the First Title Defendants transferred $1,000,000 to a third party called "Lendterra." (Exhibit 5, at MA000825). The First Title Defendants then depleted the escrow accounts in a series of unauthorized transfers to themselves and third parties. From August 24, 2020 to February 10, 2021, the First Title Defendants transferred no less than $4,356,532.97 of Mighty Argo's Funds out of the escrow accounts. (*Id.,* at MA000795-796; Loevlie Decl., ¶9).

First Title again breached the Escrow Agreement when it failed to return the Funds upon demand. Section 4 requires First Title to release the Funds upon request from Trivecta or Mighty Argo. (Exhibit 2, §4). Mighty Argo and Trivecta demanded the First Title Defendants to return the Funds on February 15, 16, and 22, 2021. (Exhibits 7, 8). To date, the First Title Defendants have failed and refused to return the Funds to Mighty Argo. (Loevlie Decl., ¶11). Mighty Argo was only able to secure $143,467.03 of its $4,500,000.00 through a wire recall issued by Mighty Argo's FirstBank to Navy Federal Credit Union. (Loevlie Decl., ¶11).

Finally, First Title breached the Escrow Agreement by failing to indemnify Mighty Argo for losses caused by First Title's actions and inactions. (Exhibit 2, §12). Specifically, First Title agreed to:

> indemnify and hold harmless [Mighty Argo] against, all loss, liability, cost or expense, including reasonable attorneys' fees (including the allocated cost of in-

house counsel) and other costs incurred by [Mighty Argo] due to [First Title's] gross negligence or willful misconduct or unexcused failure to act in accordance with the provisions of this Agreement.

(*Id.*).

It is undisputed that First Title failed to act in accordance with the Escrow Agreement and undisputed that the transfers constituted willful misconduct.

First Title's actions, along with the actions of its affiliates, Defendants Bacon and McGee, have damaged Mighty Argo. Pursuant to the clear and unambiguous terms of the Escrow Agreement, First Title is liable to Mighty Argo for breach of the Escrow Agreement.

## II.    The First Title Defendants Committed Fraud When They Transferred Mighty Argo's Funds and Concealed the Location of the Funds (Claim 6 – Against McGee, Bacon and First Title).

Fraudulent concealment under Colorado law requires: (1) concealment of a material fact that in equity and good conscience should be disclosed; (2) knowledge on the part of the party against whom the claim is asserted that such a fact is being concealed; (3) ignorance of that fact on the part of the one from whom the fact is concealed; (4) the intention that the concealment be acted upon; and (5) action on the concealment resulting in damages. *First Horizon Merchant Servs., Inc. v. Wellspring Capital Mgmt.,* 166 P.3d 166, 176 (Colo.Ct.App.2007) (citing *Kopeikin v. Merchs. Mortgage & Trust Corp.,* 679 P.2d 599, 601 (Colo.1984)).

The evidence in this case indisputably demonstrates that the First Title Defendants committed fraud when they induced Mighty Argo to deposit funds into the First Title Defendants' escrow accounts, stole the funds, and then concealed the fact that the Funds were gone.

### A.    Fraudulent Acts and Conveyances.

#### i.    McGee fraudulently altered a bank statement to show proof of funds.

On February 10, 2021, McGee fraudulently concealed the location of the Funds by sending an altered bank statement to Trivecta with the intent that Trivecta and Mighty Argo not pursue the Funds. (E-mail from C. McGee, Exhibit 18, MA000942). With the subject line "POF Funds" (proof of funds), McGee attached a bank statement showing that the First Title Defendants held $7,121,271.74 in funds. (January 31, 2021 Wells Fargo Bank Statement, Exhibit 19, MA000177-179, hereinafter, the "Altered Statement"). The Altered Statement was fake.

The Altered Statement was for a Wells Fargo account dated January 31, 2021, titled in KC Gull Industries Trust, with Natalie Charles as Trustee. (Exhibit 19). KC Gull Industries was an entity run by McGee. (KC Gull letter created by McGee, Exhibit 20, TRIVECTA000753-754; *see also* Loevlie Decl., ¶18).

Mighty Argo issued a subpoena to Wells Fargo seeking the same January 31, 2021 statement for KC Gull Industries and Natalie Charles. (Subpoena to Wells Fargo, Exhibit 21).  No statement existed for KC Gull Industries with a trustee of Natalie Charles. Instead, Wells Fargo produced statements for KC Gull Industries with a trustee of Christeena S. McGee, including the January 31, 2021 statement. (January 31, 2021 Wells Fargo Bank Statement, Exhibit 22, MA001322-1324 hereinafter, the "Original Statement").

The Original Statement produced by Wells Fargo is nearly identical to the Altered Statement sent by McGee. Both statements reflect identical line-item descriptions; withdrawal amounts; routing numbers; statement dates; and ending account numbers. (Compare Exhibit 19 with Exhibit 22).   However, McGee altered the Original Statement in several respects.

First, McGee added $7 million to the balance by inserting "7,1" in front of the balance on each line-item. While the Original Statement showed $20,803.89 on the first line item, McGee

added a "7,1", turning the *ending daily balance* to "7,120,803.89." This is apparent when comparing the ending balance on the first 5 line-items:

Original Statement, <u>Exhibit 22</u>:

| Date | Description | Deposits/ Additions | Withdrawals/ Subtractions | Ending daily balance |
|------|-------------|---------------------|---------------------------|----------------------|
| 1/4 | ⁂ Health Shield Tel Pmts 010421 85Qzlf Christeena McGee | | 467.85 | 20,803.89 |
| 1/6 | ⁂ Online Transfer to Kc Gull Industries Trust Portfolio Checking xxxxxx9471 Ref #lb09L36x3R on 01/06/21 | | 1,000.00 | 19,803.89 |
| 1/7 | ⁂ Online Transfer to Kc Gull Industries Trust Portfolio Checking xxxxxx9471 Ref #lb09L89Vqt on 01/07/21 | | 3,000.00 | 16,803.89 |
| 1/14 | ⁂ Online Transfer to Kc Gull Industries Trust Portfolio Checking xxxxxx9471 Ref #lb09Mkgw3F on 01/14/21 | | 1,500.00 | 15,303.89 |
| 1/25 | ⁂ Online Transfer to Kc Gull Industries Trust Portfolio Checking xxxxxx9471 Ref #lb09Pky4Wh on 01/25/21 | | 1,500.00 | 13,803.89 |
| 1/29 | Interest Payment | 0.27 | | 13,804.16 |
| Ending balance on 1/31 | | | | 13,804.16 |
| **Totals** | | **$0.27** | **$7,467.85** | |

Altered Statement, <u>Exhibit 19</u>:

| Date | Description | Deposits/ Additions | Withdrawals/ Subtractions | Ending daily balance |
|------|-------------|---------------------|---------------------------|----------------------|
| 1/4 | ⁂ Health Shield Tel Pmts 010421 85Qzlf KC GULL ACCT | | 467.85 | 7,120,803.89 |
| 1/6 | ⁂ Online Transfer to Kc Gull Industries Trust Portfolio Checking xxxxxx9471 Ref #lb09L36x3R on 01/06/21 | | 1,000.00 | 7,119,803.89 |
| 1/7 | ⁂ Online Transfer to Kc Gull Industries Trust Portfolio Checking xxxxxx9471 Ref #lb09L89Vqt on 01/07/21 | | 3,000.00 | 7,116,803.89 |
| 1/14 | ⁂ Online Transfer to Kc Gull Industries Trust Portfolio Checking xxxxxx9471 Ref #lb09Mkgw3F on 01/14/21 | | 1,500.00 | 7,115,303.89 |
| 1/25 | ⁂ Online Transfer to Kc Gull Industries Trust Portfolio Checking xxxxxx9471 Ref #lb09Pky4Wh on 01/25/21 | | 1,500.00 | 7,113,803.89 |
| 1/29 | Interest Payment | 1,666.67 | | 7,115,470.56 |
| Ending balance on 1/31 | | | | 7,115,470.56 |
| **Totals** | | **$1,666.67** | **$7,467.85** | |

Second, McGee altered the interest payment found in line-item 1/29. Logically, $7 million in funds would produce more interest than $0.27 as reflected in the Original Statement. To ensure Mighty Argo did not notice, McGee changed the interest to $1,666.67 for line-item 1/29.

Finally, McGee changed trustee from "Christeena S. McGee" to "Natalie Charles" to create the sense that the account was managed by a neutral and disinterested party. (Compare <u>Exhibit 19</u>, at MA000177 to <u>Exhibit 22</u>, at MA001322).

McGee concealed the fact that the First Title Defendants no longer had Mighty Argo's Funds. She sent the Altered Statement with the intent that Trivecta and Mighty Argo not pursue the Funds or delay in pursuing the Funds. Mighty Argo relied on the Altered Statement thereby

delaying its pursuit. Mighty Argo did not know the Funds had been stolen and believed the First Title Defendants would return the Funds.

> ii.     **Bacon, McGee and First Title fraudulently concealed the Funds location when they transferred the Funds from the escrow accounts and misled Mighty Argo thereafter.**

Bacon and McGee dictated transfers from First Title's escrow accounts. Bacon is the owner and president of First Title. (Secretary of State for First Title, Exhibit 23, MA000946-947; *see also,* email from McGee to Bacon directing her to make a transfer, Exhibit 24, at TRIVECTA0000233). McGee worked with Bacon and was a contact between First Title (escrow company), Mighty Argo (depositor) and Trivecta (financer and broker). (Loevlie Decl., ¶5). Both Bacon and McGee played an active role in concealing the Funds.

On August 20, 2020, Trivecta asked Bacon if Mighty Argo's first deposit made it to the escrow accounts. Bacon responded "Yes and it is now safely in my escrow account." (E-mail from Bacon, Exhibit 25, at TRIVECTA000195). The funds were anything but "safe." Four days later the First Title Defendants transferred $1,000,000 to a third party called "Lendterra" and $200,000 to attorney Derek Deyon. (Exhibit 5, at MA000824-825). Bacon continued to confirm receipt of Mighty Argo's money as the First Title Defendants stole it. On October 13, 2020, Bacon confirmed "Just got the deposit!" and on October 26, 2020, Bacon stated "[the deposit] did come about an hour ago. Thank you!" (Exhibit 26, TRIVECTA000187; Exhibit 27, TRIVECTA000194). Bacon concealed and failed to disclose the fact that, up to this point, the First Title Defendants stole over $2 million from the escrow accounts. (Exhibit 5).

The concealment continued after Mighty Argo demanded return of the Funds. On February 16, 2021, McGee represented that their attorney Derek Deyon will release the funds soon. (E-mail

from McGee, <u>Exhibit 28</u>, MA000477) ("He has all the information and will authorize the return of funds once the release documents are signed."). McGee again misled Mighty Argo on February 17, 2021. McGee stated the Funds required "extra clearance" but assured that release was forthcoming. (<u>Exhibit 7</u>).  When McGee wrote these emails, she knew that she, Bacon and First Title had already absconded with 97% of Mighty Argo's Funds. (<u>Exhibit 5</u> at MA000795-796; Loevlie Decl., ¶9).

### iii.     Bacon, McGee and First Title transferred funds to themselves.

The First Title Defendants transferred $4.5 million for their own benefit and gain. Of the $4.5 million, thousands went directly into the First Title Defendants' personal accounts.

The escrow accounts include x8730 and x7372 (<u>Exhibit 3</u>). Shortly after depositing the Funds, the First Title Defendants transferred $702,969.48 into First Title's checking account x8362. (Navy Federal Credit Union Statements, <u>Exhibit 29</u>, at MA000699). From those three accounts (x8730, x7372 and x8362), McGee received $93,705.77 into her personal account, Bacon received $6,000 to the Bacon Group Inc., and First Title received $70,000 to outside accounts held in its name.  (Export sorted by Payee, <u>Exhibit 30</u>, at MA000948-950,; *see also,* Loevlie Decl., ¶22). The First Title Defendants inevitably received more. The above-figures only include funds from the escrow accounts to them directly. This does not include funds they transferred to entities potentially controlled by them, or to third parties under a kick-back arrangement.

These transfers are a small sample size of the millions of dollars the First Title Defendants transferred in their fraudulent scheme. (<u>Exhibit 5</u>). The First Title Defendants were not authorized to make any transfers, let alone transfers to their personal accounts.

### B.     By Failing to Respond to Requests for Admissions, the First Title Defendants Admitted Their Fraudulent Conduct pursuant to Fed. R. Civ. P. 36(b).

In addition to the declaration, emails, wire transfers, and bank statements, Mighty Argo's Motion is supported by the facts admitted by the First Title Defendants during this litigation. As set forth in the Loevlie Declaration, each of the First Title Defendants was served with requests for admissions. (Loevlie Decl., ¶¶12, 16). Each of the First Title Defendants failed to timely respond to Mighty Argo's requests. (*Id.,* ¶¶13, 14, 17). Pursuant to Fed. R. Civ. P. 36, the facts delineated in the requests are deemed "admitted" and "conclusively established[.]" Fed.R.Civ.P. 36(a)(3) ("[a] matter is admitted unless, within 30 days" it is answered or objected to); and 36(b) ("[a] matter admitted under this rule is conclusively established…").

Federal Rule of Civil Procedure 56(c) specifies that "admissions" can be an appropriate basis for granting summary judgment. Fed. R. Civ. P. 56(c)(1)(A). "For purposes of a summary judgment motion the requests for admissions which have been 'deemed' admitted should be accepted as uncontroverted facts." *Echostar Satellite L.L.C. v. Channel One TV, Inc.*, No. 05-CV-00467-WYD, 2007 WL 8833, at *3 (D. Colo. Jan. 2, 2007) quoting *United States v. Worden,* No. 034143SAC, 2004 WL 2030286, at *2 (D.Kan.2004).

By their failure to respond to RFAs, Bacon and McGee admitted:

- that they transferred Mighty Argo's Funds and retained monies from Mighty Argo's escrow accounts;

- that they concealed and failed to disclose the fact that they transferred money from Mighty Argo's escrow accounts;

- that they concealed and failed to disclose the current location of Mighty Argo's Funds;

- that they had a duty to disclose these material facts; and

- that they took these actions and inactions with the intent to evade Mighty Argo.

(<u>Exhibit 16</u> (RFAs to Bacon) at RFAs 1-11; <u>Exhibit 17</u> (RFAs to McGee) at RFAs 5-11).

Likewise, First Title has failed to timely respond to any discovery request. Mighty Argo issued its First Set of Discovery Requests to First Title in September 2021. (<u>Exhibit 10</u>). First Title ultimately responded 47 days later after the RFAs were deemed admitted. (Loevlie Decl., ¶14). In each response, the First Title Defendants "[p]lead the 5[th] Amendment." (<u>Exhibits 12</u>, <u>13</u>, and <u>14</u>). While an individual may be entitled to 5th amendment protections, "[t]he law is clear that a corporation cannot assert a privilege against self-incrimination." *U.S. v. Hansen Niederhauser Co., Inc.,* 522 F.2d 1037 (10th Cir. 1975).

The parties participated in a discovery dispute hearing on First Title's 5th amendment invocation. Following the hearing, the Court held:

> By January 19, 2022, First Title, Inc. shall supplement their responses to the interrogatories and produce documents consistent with the request for production. **First Title Inc. is placed on notice that sanctions, including potentially default judgment might be entered if First Title fails to comply with this order**. Absent a good faith and meaningful effort to supplement, the Court would entertain a motion for sanctions.

(Dkt. 55) (bold added).

To date, First Title has not complied with the Court's Order.  (Loevlie Decl., ¶15). Its willful noncompliance with the discovery requests and this Court's order supports summary judgment in this matter.

While these Rule 36 "deemed admissions" increase the quantum of evidence supporting Mighty Argo's Motion, they are cumulative. As demonstrated above, there is overwhelming independent evidence to warrant granting summary judgment.

**III.    The Summary Judgment Evidence Establishes that the First Title Defendants are Liable for $4.35 million in actual damages and $4.35 million in exemplary damages.**

A.     **Exemplary Damages under Colorado law.**

"In all civil actions in which damages are assessed by a jury for a wrong done to the person or to personal or real property, and the injury complained of is attended by circumstances of fraud, malice, or willful and wanton conduct, the jury, in addition to the actual damages sustained by such party, may award him reasonable exemplary damages." C.R.S. § 13–21–102(1)(a); *Sky Fun 1 v. Schuttloffel*, 27 P.3d 361 (Colo. 2001) (exemplary damages may be awarded by a judge or a jury). "The general purposes of punitive damages under section 13–21–102 are punishment of the defendant and deterrence against the commission of similar offenses by the defendant or others in the future." *Coors v. Sec. Life of Denver Ins. Co.,* 112 P.3d 59, 65 (Colo.2005). "Consistent with these purposes, [the statute] requires that punitive damages shall only be awarded in a civil action where the party asserting the claim proves beyond a reasonable doubt that the injury sustained was attended by circumstances of fraud, malice, or willful and wanton conduct." *Id.* (emphasis added); *see* C.R.S. § 13-25-127(2).

The elements of "circumstances of fraud" are identical with the necessary elements of fraud under Colorado law. *Amber Props., Ltd. v. Howard Elec. & Mechanical Co.,* 775 P.2d 43, 46 (Colo.Ct.App.1988) (citing *Palmer v. A.H. Robins Co.,* 684 P.2d 187 (Colo.1984)). Exemplary damages may be based on a claim for fraud. *Redies v. Nationwide Mut. Ins. Co.,* 711 F. Supp. 570, 574 (D. Colo. 1989) citing *Fitzgerald v. Edelen,* 623 P.2d 418 (Colo. App. 1980) (award of punitive damages upheld on claim of fraudulent representation).

"'[W]illful and wanton conduct' means conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly the plaintiff." § 13-21-102(1)(b). "[W]here a

defendant is conscious of both its conduct and the existing conditions, and knew or should have known that injury would result, the requirements of [§] 13-21-102 are met." *Blood v. Qwest Servs. Corp.*, 224 P.3d 301, 314 (Colo. App. 2009).

      **B.**    **The Requirements of C.R.S. § 13-21-102 Are Met.**

      The First Title Defendants fraudulently and willfully damaged Mighty Argo. The First Title Defendants stole $1.2 million just 4 days after Mighty Argo's first deposit. Bacon and First Title assured the Funds were "safely in my escrow account." (Exhibit 25). They continued to confirm receipt of the deposits without disclosing that they were dissipating the funds at the same time. Their reassurance and concealment of the transfers led Mighty Argo to deposit the remaining $3 million into escrow. Over the next three months, Mighty Argo deposited a total of $4.5 million with the First Title Defendants. Unbeknownst to Mighty Argo, the First Title Defendants were stealing the money almost as fast as Mighty Argo was depositing it. (Compare Exhibit 3 to Exhibit 5, at MA000795-796).

      The willful conduct exacerbated once Mighty Argo inquired about its escrowed-Funds. In order to conceal the theft, McGee falsified a Wells Fargo statement to show the Funds in a separate account. McGee altered the statement to buy the First Title Defendants more time to conceal and steal the Funds. McGee then stated the funds would be released any day when she knew the funds were gone.

      The First Title Defendants knew their actions were dangerous, knew the Funds belonged to Mighty Argo, knew the Funds must always remain in escrow, and knew they must return the Funds upon request. The First Title Defendants acted recklessly without regard to Mighty Argo's rights when they transferred the Funds out of the escrow accounts and lied and concealed that fact

to Mighty Argo so they could steal more of Mighty Argo's money. This is the precise type of conduct that the exemplary damages' statute was designed to apply. *Mince v. Butters,* 616 P.2d 127 (Colo. 1980) (The general purposes of exemplary damages are punishment of the defendants and deterrence against the commission of similar offenses by the defendants or others in the future).

Thus, Mighty Argo has two bases for exemplary damages. First, under the "circumstances of fraud" prong, and, independently, for the "willful and wanton conduct." Since all elements of §13-21-102 are met, this Court should award Mighty Argo $4.35 million in exemplary damages.

If any doubt remains, the First Title Defendants have shown nothing to prove that their conduct will cease or that they are deterred from repeating their conduct in the future. Their misrepresentations, conduct and concealment continued in the months leading up to the Complaint.

Their lack of remorse is highlighted in their correspondence with Trivecta. In response to where Mighty Argo's release documents were, McGee wrote: "Those people are nuts … Their stupid attorney is about to get slapped with a defamation lawsuit so I'm not discussing anything else until we are advised." (Text from McGee, Exhibit 31, TRIVECTA001474). When Trivecta inquired with Bacon, Bacon wrote: "You do realize that my account has been frozen by your business associate … As a result I cannot send or receive so these daily emails serve no purpose." (E-mail from Bacon, Exhibit 32, TRIVECTA000726).

The Complaint and threat of actual damages did not change the First Title Defendants' attitude. They continue to treat this litigation as a minor nuisance deserving little attention. They have repeatedly disregarded their discovery obligations, disregarded the Rules of Civil Procedure, and disregarded Court Orders all while they retain and use $4,356,532.97 of Mighty Argo's Funds.

Unfortunately, the $4.35 million is the tip of the iceberg for Mighty Argo. Mighty Argo raised its funds through 35 individual investors. (Loevlie Decl., ¶23). The delay cost Mighty Argo thousands in interest on those investments and over two million dollars in increased construction costs. (*Id.*). On a personal level, many of those investors were and are friends, family members, and members of the Idaho Springs community who believed in Mighty Argo. (*Id.*). Mighty Argo was forced to tell those people that their funds have been stolen. (*Id.*).

## CONCLUSION

Mighty Argo respectfully requests this Court:

A. Grant Mighty Argo summary judgment on its breach of contract claim against First Title, Inc.;

B. Grant Mighty Argo summary judgment on its fraud claim against First Title Inc., Sandy Bacon and Chrisheena McGee (collectively, the "First Title Defendants");

C. Award Mighty Argo $4,356,532.97 in actual damages from the First Title Defendants' fraud and First Title Inc.'s breach of contract;

D. Award Mighty Argo $4,356,532.97 in exemplary damages from the First Title Defendants' fraud;

E. Award Mighty Argo its attorney fees and costs pursuant to rule, statute or section 12 of the Escrow Agreement; and

F. For any further relief this Court deems proper.

Respectfully submitted this 4th day of February 2022.

**ROBINSON WATERS & O'DORISIO, P.C.**

*/s/Nicholas F. Labor*
Anthony L. Leffert, #12375
Nicholas F. Labor, #48687
*Counsel for Plaintiff*

## CERTIFICATE OF FIILNG AND SERVICE

I hereby certify that on this 4th day of February, 2022, a true and correct copy of the

foregoing **MOTION FOR PARTIAL SUMMARY JUDGMENT** was filed with the Clerk of the

Court and electronically served on the following via the Court's CM/ECF system:

**CHIPMAN GLASSER, LLC**
Daniel W. Glasser
Barry C. Bartel
2000 S. Colorado Blvd.
Tower One, Suite 7500
Denver, Colorado 80222
dglasser@chipmanglasser.com
bbartel@chipmanglasser.com
*Attorneys for Trivecta Capital Group, Inc. and Argo Mill SL LLC*

**THE DEYON LAW GROUP, PLLC**
Derek H. Deyon
440 Louisiana Street, Suite 900
Houston, Texas 77002
ddeyon@deyonlawgroup.com
*Attorney for First Title, Inc. Sandra Bacon and Chrisheena Shante McGee a.k.a. Christina Marius*

/s/ Nina Olson
Nina Olson, Paralegal