**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:21-CV-01106-RMR-NRN

MIGHTY ARGO CABLE CAR, LLC,
a Colorado limited liability company

Plaintiff,

v.

TRIVECTA CAPITAL GROUP, INC; ARGO MILL SL LLC; JAY MATTHIESEN, an individual; TRIVECTA CAPTIAL GROUP, LLC; MINT INTEREST GROUP, LLC; FIRST TITLE, INC., SANDRA BACON, an individual; and CHRISHEENA SHANTE MCGEE a.k.a. Christina Marius, an individual.

Defendants.

**FILED**
**UNITED STATES DISTRICT COURT**
**DENVER, COLORADO**
*1:37 pm, Mar 23, 2022*
**JEFFREY P. COLWELL, CLERK**

## SECOND AMENDED VERIFIED COMPLAINT

Plaintiff Mighty Argo Cable Car, LLC by and through counsel, Anthony L. Leffert and Nicholas F. Labor of Robinson Waters & O'Dorisio, P.C., hereby files its Second Amended Complaint and claims for relief against Defendants and states and alleges the following:

### I. PARTIES, JURISDICTION, AND VENUE

1.  Plaintiff Mighty Argo Cable Car, LLC ("Mighty Argo") is a Colorado limited liability company whose principal place of business is 1431 Miner St., Idaho Springs, CO 80452. There are fifty-five members of Mighty Argo none of whom are domiciled in Texas or Virginia. (*See Exhibit A – List of Members)*.

2.  Defendant Trivecta Capital Group, Inc. ("Trivecta") is believed to be a Texas corporation whose principal place of business is 2808 Fairmount, Suite 130, Dallas, TX 75201.

3. Defendant Argo Mill SL, LLC ("Argo Mill"), is a Delaware limited liability company and an affiliate of Trivecta. Its principal place of business is 2808 Fairmount St., Suite 130 Dallas, TX 75201. The member of Argo Mill is Jay Matthiesen who resides in Dallas, Texas.

4. Defendant Jay Matthiesen ("Matthiesen") is an individual who resides in Dallas, Texas.

5. Defendant Trivecta Capital Group, LLC ("Trivecta LLC") is a Texas limited liability company with a principal place of business at 2808 Fairmount St., Ste. 130, Dallas, Texas 75201-1304. Upon information and belief Jay Matthiesen is the managing member of Trivecta, LLC.

6. Defendant Mint Interest Group, LLC ("Mint") is a Texas limited liability company with a principal place of business at 8200 San Benito Way, Dallas, Texas 75218. Upon information and belief, Mint's members include M Realty Designs, LLC ("M Realty") and Gerald C. Grotz, Jr. ("Grotz"). Upon information and belief, Jay Matthiesen is the managing member of M. Realty. Upon information and belief, Grotz resides in Texas.

7. Defendant First Title, Inc. ("First Title") is believed to be a Virginia corporation whose principal place of business is 1320 Central Park Blvd., #200, Fredericksburg, VA 22401.

8. Defendant Sandra Bacon ("Bacon") is the owner of Defendant First Title and resides in Virginia.

9. Defendant Chrisheena Shante McGee a.k.a. Christina Marius ("McGee," together with First Title and Bacon, the "First Title Defendants") resides in Spring, Texas.

10. This Court has subject matter jurisdiction over Plaintiff's claims through diversity jurisdiction under 28 USC §1332. The matter in controversy exceeds the sum or value of

$75,000.00 exclusive of interest and costs. Moreover, complete diversity exists between the plaintiff and the defendants. The claims are between the Plaintiff, a Colorado limited liability company in the State of Colorado and the Defendants, a Texas corporation, two Texas limited liability companies, a Virginia Corporation, and individual defendants who reside in Virginia or Texas. U.S.C. §1391(d).

11. Personal jurisdiction is proper as Defendants transacted business in the State of Colorado during the time period in question and had sufficient minimum contacts with the State of Colorado. Venue is proper pursuant to 28 USC §1391(b)(2) as a substantial part of the events and omissions giving rise to the Plaintiff's claims occurred in this judicial district.

## II.     GENERAL ALLEGATIONS

12. Plaintiff and Trivecta entered into negotiations for financing of a construction project to build a cable car/gondola in Idaho Springs Colorado in summer 2020. Trivecta represented, through its owner and agent Jay Matthiesen, that it could obtain the funds to finance the project if the Plaintiff could raise $4,500,000. Matthiesen represented that Trivecta or one of its affiliates could raise and loan $32,372,000 to complete the project.

13. On August 19, 2020, Plaintiff entered into an Escrow Agreement with Trivecta Capital Group, Inc. and First Title, Inc. *See Exhibit B - Escrow Agreement.* Pursuant to the agreement, Plaintiff was to transfer $4,500,000 into the escrow account of First Title until the closing of the funding of the transaction by Trivecta. Trivecta was to deposit $32,372,000 into the escrow account. Following the deposit of all escrowed funds, pursuant to the Escrow Agreement, Plaintiff was to receive their escrowed funds and the Trivecta funds were to be used to fund the acquisition costs and construction of the cable car/gondola.

14. Pursuant to the Escrow Agreement, Mighty Argo deposited the $4.5 million as required. Trivecta failed to deposit the $32,372,000 as required by the Escrow Agreement. Mighty Argo and Trivecta sent a demand for the immediate release of the escrowed funds pursuant to the Escrow Agreement dated February 22, 2021. *See Exhibit C - Demand for Immediate Release of Escrowed Funds*. Despite the demand to the escrow agent to immediately release the escrow funds, First Title failed and refused to release the funds to Mighty Argo.

15. Upon information and belief, First Title and/or Trivecta engaged in fraudulent conduct with respect to the escrowed funds. Defendants Sandra Bacon and Chrisheena McGee acted in concert and had control of the escrowed funds. Upon information and belief Defendants Bacon and McGee fraudulently transferred the escrowed funds out of First Title's account at Navy Federal to one or more other accounts owned or controlled by both of them. Despite demands, Defendants Bacon and McGee have refused to return the funds of Mighty Argo.

16. On January 20, 2021, Plaintiff Mighty Argo entered into a Construction Loan Agreement with Argo Mill SL, LLC an affiliate of Trivecta. Pursuant to the Construction Loan Agreement, Argo Mill would acquire the funding from Defendant Trivecta and use those funds to provide a loan to Plaintiff Mighty Argo to acquire and construct the cable car/gondola project. *See Exhibit D - Construction Loan Agreement*. Pursuant to the Construction Loan Agreement, Argo Mill was required to provide financing for the project. The loan amount to be provided was $33,900,000. The Construction Loan Agreement required Argo Mill to make an initial payment and draw to pay expenses, charges, costs, and fees. Defendant Argo Mill failed to pay the initial draw and has not provided any funding for the project.

### III.  FIRST CLAIM FOR RELIEF
**Breach of Contract against First Title, Inc.**

17. All of the previous allegations are incorporated as if fully set forth herein.

18. Plaintiff Mighty Argo had a contract agreement for the escrowed funds with First Title. Mighty Argo fully performed its obligations under the Escrow Agreement.

19. First Title breached the Escrow Agreement by refusing to release to Mighty Argo the escrowed funds as demanded by Mighty Argo and Trivecta.

20. As direct and proximate result of First Title's breach of contract, Mighty Argo has been damaged in an amount to be proven at trial.

21. Paragraph 12 of the Escrow Agreement requires First Title to indemnify and hold harmless Mighty Argo for all loss, costs or expenses, including reasonable attorney's fees due to First Title's gross negligence or willful misconduct or unexcused failure to act in accordance with the provisions of this agreement. First Title has breached the agreement and breached the indemnity provision by failing to indemnify and reimburse Plaintiff for all loss costs or expenses, including reasonable attorney's fees, in connection with its unexcused failure and or willful misconduct in failing to return Mighty Argo's funds.

### IV. SECOND CLAIM FOR RELIEF
**Promissory Estoppel against First Title, Inc.**

22. All of the previous allegations are incorporated as if fully set forth herein.

23. First Title made representations and promises to Mighty Argo regarding the receipt, holding, and disbursement of Mighty Argo's funds. Mighty Argo is estopped to deny these promises.

### V. THIRD CLAIM FOR RELIEF
**Unjust Enrichment against First Title, Inc.**

24. All of the previous allegations are incorporated as if fully set forth herein.

25.     Defendant First Title has been unjustly enriched and received a benefit at the Plaintiff's expense by intentionally refusing to return Plaintiffs escrowed funds.

26.     It would be unjust and inequitable to allow First Title to retain the monies escrowed by the Plaintiff. Justice requires that First Title disgorge all unjustly retained funds to Plaintiff.

## VI.  FOURTH CLAIM FOR RELIEF
**Breach of Contract against Trivecta Capital Group, Inc. and Argo Mill SL, LLC**

27.     All of the previous allegations are incorporated as if fully set forth herein.

28.     On August 9, 2020, Plaintiff Mighty Argo and Defendant Trivecta entered into an agreement for the funding of the construction project. To memorialize this contract, the parties entered into a summary of terms and conditions for senior construction loan dated August 9, 2020 (Term Sheet). The contract entered into between Mighty Argo and Trivecta required Trivecta to provide a loan to finance the marketing, construction, completion and stabilization of the project to build a cable car/gondola in Idaho Springs, Colorado. Pursuant to this loan agreement, Trivecta was to provide $32,372,000 for the funding of the project. Also pursuant to this agreement, Plaintiff Mighty Argo was to contribute cash equity equal to $4,500,000. This $4,500,000 was the amount that was deposited in the escrow account at First Title.

29.     Trivecta created a single purpose entity, Argo Mill, to make the construction loan as its affiliate. Trivecta and Argo Mill have breached Term Sheet and the Construction Loan Agreement with Plaintiff Mighty Argo and failed to provide the funds as required by the Construction Loan Agreement and the related term sheet. ***See Exhibit E – Term Sheet and Exhibit D the Construction Loan Agreement.***

30.     Mighty Argo has fully performed its obligations under the Construction Loan Agreement and the Term Sheet.

31. As a direct result of Defendant Trivecta's and Argo Mill breaches of the Construction Loan Agreement and the Term Sheet, Plaintiff Mighty Argo has been damaged in an amount to be proven at trial.

## VII.  FIFTH CLAIM FOR RELIEF
### Promissory Estoppel against Trivecta Capital Group, Inc.

32. All of the previous allegations are incorporated as if fully set forth herein.

33. Trivecta made representations and promises to Mighty Argo regarding the funding of the construction project and it is estopped to deny them.

## VIII.  SIXTH CLAIM FOR RELIEF
### Intentional Fraud and Fraudulent Concealment against
### First Title and Sandra Bacon and Chrisheena McGee

34. All of the previous allegations are incorporated as if fully set forth herein.

35. Upon information and belief, Defendants First Title and Sandra Bacon and Chrisheena McGee have fraudulently transferred Plaintiffs funds held in escrow to other accounts for their own benefit. Further, these defendants have concealed the location of the funds or the accounts in which they are being held.

36. The fraudulent transfers and concealment are material and have caused damages to Plaintiff in an amount to be proven at trial.

37. These defendants conduct was fraudulent, malicious, willful and wanton. Plaintiff will seek exemplary damages when it is allowed to do so.

## X. SEVENTH CLAIM FOR RELIEF
### Fraud
### Against Jay Matthiesen

38. All of the previous allegations are incorporated as if fully set forth herein.

39. Matthiesen committed fraud in three regards: inducement, misrepresentation, and nondisclosure.

40. Upon information and belief, Matthiesen is the sole owner of Trivecta and Trivecta, LLC.

41. Matthiesen arranged for Mighty Argo to place $4.5 million into escrow with First Title. The Escrow Agreement and the supposed-escrow accounts were nothing more than a sham intended to give the Defendants' fraudulent scheme an air of legitimacy. Matthiesen was part of the fraudulent scheme by misrepresenting, concealing and failing to disclose material facts.

### *Inability to Fund the Gondola Project*

42. Matthiesen fraudulently induced Mighty Argo to enter the Escrow Agreement and deposit $4.5 million with First Title.

43. Matthiesen assured Mighty Argo that he or one of his entities would loan Mighty Argo $32 million to fund Mighty Argo's gondola project so long as Mighty Argo placed $4.5 million into escrow with First Title.

44. In the months leading up to the Escrow Agreement, June 2020 through August 2020, Matthiesen represented on more than one occasion that he and his entities raised or had the $32 million necessary to fund Mighty Argo's gondola project. Matthiesen represented that the funds were ready and available to use. On August 19, 2020, Matthiesen also represented that Trivecta had $500,000 in a separate escrow to be used for the gondola project.

45. Based on these and other representations, Mighty Argo entered into the Escrow Agreement with Trivecta and First Title, and deposited $4.5 million into escrow with First Title.

46. In reality, neither Matthiesen nor his entities had the capital necessary to fund Mighty Argo's gondola project. In addition, upon information and belief, neither Matthiesen nor his entities had $500,000 in its own escrow account.

47. Behind closed doors, Matthiesen arranged for a Credit Facility Agreement ("CFA") between Trivecta and Champion Lending Services ("Champion Lending") allowing Trivecta to receive a $50 million line of credit if it deposited millions into escrow with First Title.

48. Instead of depositing its own money into escrow, Trivecta and Matthiesen arranged for Mighty Argo to deposit its money.

49. Upon information and belief, Champion Lending is affiliated with McGee, Bacon and First Title. Thus, Trivecta and Matthiesen would receive $50 million from Champion Lending if it convinced Mighty Argo to deposit its funds with Champion Lending's affiliate - First Title.

50. Trivecta and Matthiesen did not disclose the CFA to Mighty Argo.

51. The undisclosed CFA was material. Matthiesen represented he and his entities had the $32 million ready and available to disburse. Matthiesen did not disclose that he and his entities had no funds. He also did not disclose that his alleged $32 million was completely contingent and speculative.

52. Trivecta and Matthiesen did not disclose that First Title (the escrow company) was affiliated with the Champion Lending (the company that allegedly promised Matthiesen and Trivecta $50 million contingent on Mighty Argo's depositing its funds). Matthiesen did not disclose that Champion Lending insisted the $4.5 million be placed with First Title. These facts were material.

53. First Title was no longer a neutral intermediary as presented by Matthiesen. It instead was an insider to an undisclosed deal between Trivecta and Champion Lending, and brokered by Matthiesen, McGee and other defendants.

54. Matthiesen and Trivecta were no longer neutral either. They now had an undisclosed interest in receiving $18 million in excess of their obligations to Mighty Argo.

55. If Mighty Argo knew these facts it would not have placed its $4.5 million with First Title. Indeed, the funds were quickly stolen, with at least $150,000 going to Matthiesen and his entities.

### *Undisclosed $150,000 Transfer*

56. From August 19, 2020 to November 4, 2020, Mighty Argo made 8 deposits totaling $4.5 million into First Title's escrow accounts.

57. On October 8, 2020, Matthiesen requested $150,000 from Defendant McGee relating to Mighty Argo's funds.

58. This request was contrary to the undisclosed CFA. Under the undisclosed CFA, Trivecta could only receive funds after the total escrow of $4.5 million was complete. However, Matthiesen requested funds nearly one month before total escrow was complete.

59. The request was also contrary to the Escrow Agreement. Under the Escrow Agreement, the funds were required to be held in escrow and returned to Mighty Argo upon request.

60. On October 16, 2020, Matthiesen again sent McGee wire instructions for the $150,000.

61. To further conceal the transfer and the location of these funds, Matthiesen directed the funds to go to an account held by Trivecta Capital Group, LLC, instead of Trivecta Capital Group, Inc. Trivecta, Inc. is the party to the CFA and Escrow Agreement, while Trivecta LLC was an undisclosed entity.

62. On October 21, 2020, the First Title Defendants transferred $150,000 to Trivecta LLC. Matthiesen did not disclose this transfer to Mighty Argo.

63. Matthiesen knew the $150,000 belonged to Mighty Argo. Matthiesen knew the line of credit was not yet funded when he received the $150,000. He also knew under the CFA that any working capital draw was only available *after* total funding was complete. When he requested the funds, Matthiesen admitted only $2.85 million of Mighty Argo's $4.5 million was deposited.

64. Over the next several months, Matthiesen depleted the $150,000, with tens of thousands going to a separate bank account in Trivecta LLC's name.

65. From there, Matthiesen again transferred tens of thousands to Mint. Upon information and belief, Mint is owned by Matthiesen and Grotz.

66. Upon information and belief, Matthiesen and Grotz then transferred tens of thousands of dollars to Matthiesen's wife, Carrie Matthiesen, and paid tens of thousands of dollars for work done to Matthiesen's personal residence in Texas, including paying Grotz as a contractor on Matthiesen's home.

67. Matthiesen did not disclose these transfers to Mighty Argo and did not disclose that he used some of Mighty Argo's funds for personal gain.

### *Failing to Disclose the True Status of the Funds*

68. Matthiesen failed to disclose the gravity of the situation to Mighty Argo. Matthiesen's conversations with McGee in February 2021 made it clear that Mighty Argo's $4.5 million was transferred out of the escrow accounts. However, during this same time Matthiesen led Mighty Argo to believe the funds were safe and secure.

69. By February 3, 2021, Matthiesen knew the entire $4.5 million could be gone and began to worry that his representations "could get [him] sued." McGee responded that she was "nervous because of the amount." Matthiesen replied, "I don't need to be sued! Really hate lawsuits and the money it wastes." Matthiesen continued, stating "I just need to know that it's really there and I can be patient". McGee then bragged that she has "big wigs in DC that helped clear this[]" and Matthiesen praised McGee stating "Good it takes that for this kinda dough. Otherwise, NSA and Bank compliance is up your butt with a microscope."

70. On February 5, when the funds were still not returned to Mighty Argo, Matthiesen said he was "worried that [Mighty Argo] will call Navy Federal and cause a big mess."

71. By February 10, Matthiesen wrote it would be a "big problem" if the $4.5 million was transferred out of the escrow accounts. McGee then admitted the funds were transferred out of the escrow accounts. Matthiesen did not disclose this fact to Mighty Argo.

72. Matthiesen then asked McGee if she could show the account statements for the "other account," i.e., show the funds leaving the original escrow accounts into the new holding account, which McGee could not. Matthiesen did not disclose this fact to Mighty Argo.

73. McGee then fraudulently altered a Wells Fargo bank statement to show a separate account holding over $7 million. Upon information and belief, Matthiesen assisted, requested or knew the Wells Fargo bank statement was forged.

74. Despite knowing McGee could not produce a statement tying the forged Wells Fargo statement to the escrow accounts with Navy Federal Credit Union, Mathiesen sent the forged bank statement to Mighty Argo. Matthiesen did not tell Mighty Argo that he asked McGee for a statement showing the "other account" (i.e. the escrow account) and that McGee would not produce it.

75. On February 12, 2021, despite clear indication that Mighty Argo's funds were transferred out of escrow, Matthiesen kept asking McGee for additional "working capital" distributions. Matthiesen and McGee agreed to another illicit distribution to be paid via ACH by February 16, 2021.

76. On February 15, 2021, Mighty Argo called Matthiesen. During that call, Matthiesen represented to Mighty Argo that its funds were safe, and that the delay was due to routine business reasons like converting the funds from Euros to U.S. dollars. Matthiesen represented that the funds were coming, and that Mighty Argo need not worry. These representations were false. And, at no point did Matthiesen disclose that the funds had been transferred out of escrow, or disclose the precarious reality that the funds were gone.

77. During the call, Mighty Argo insisted that Matthiesen send an email to McGee demanding immediate return of the funds. Before Matthiesen sent the demand, however, he tipped off McGee via text message, stating "I'll be sending an email out today per [Mighty Argo's] request." Matthiesen then sent an email to McGee purporting to insist the money be returned to Mighty Argo, but the email had no force because Matthiesen warned McGee before he sent it.

78. On February 16, 2021, Matthiesen wrote McGee that "[Mighty Argo] may start making problems" if information doesn't come soon.

79. By March 2021, Matthiesen continued with his fear that Mighty Argo would discover the scheme. On March 16, 2021, Matthiesen wrote Derek Deyon, counsel for the First Title Defendants and the recipient of $200,000 of Mighty Argo's funds, that "we got to hurry this up or we're going to be screwed if that wire gets bounced, but I am sure you know that."

80. As detailed above, Matthiesen fraudulently induced Mighty Argo to enter the Escrow Agreement and deposit $4.5 with First Title. He misrepresented that he or his companies had the money to fund the project; misrepresented that he or his companies had $500,000 in escrow; misrepresented that Mighty Argo's $4.5 million was safe in escrow; and sent a forged bank statement to Mighty Argo purporting to show proof of funds. Matthiesen also failed to disclose numerous material facts:

    a. Failed to disclose neither he nor Trivecta had the money to fund Mighty Argo's gondola project;

    b. Failed to disclose the CFA between Trivecta and Champion Lending;

    c. Failed to disclose that Champion Lending was affiliated with the First Title Defendants;

    d. Failed to disclose that he was incentivized to deposit Mighty Argo's money with First Title because he and his companies would receive a line of credit worth upwards of $50 million;

    e. Failed to disclose that he requested $150,000 relating to Mighty Argo's funds;

    f. Failed to disclose that he requested the $150,000 to be sent to an undisclosed entity, Trivecta, LLC;

    g. Failed to disclose that Trivecta, LLC received the $150,000 of Mighty Argo's funds;

    h. Failed to disclose that he transferred tens of thousands to his wife and to his business partners;

    i. Failed to disclose that he used the funds to renovate his house and for other personal expenses;

    j. Failed to disclose that Mighty Argo's $4.5 million was transferred out of the escrow accounts;

    k. Failed to disclose that he was tipping McGee off to the "demand" he made to McGee for return of the funds;

    l. Failed to disclose that he was requesting from McGee additional working capital relating to Mighty Argo's funds, after he knew the funds were transferred from the escrow accounts;

    m. Failed to disclose that McGee could not produce a bank statement showing the funds in the escrow accounts;

    n. Failed to disclose that he thought the funds were gone; and

    o. Failed to disclose McGee's clear indication that the funds would never be returned to Mighty Argo.

81. The undisclosed facts ("Undisclosed Facts") and misrepresentations ("Misrepresentations") detailed in paragraphs 41 through 80 were material.

82. Matthiesen had a duty to disclose the Undisclosed Facts since (1) he promised that one of his companies would finance Mighty Argo's gondola project if Mighty Argo placed its $4.5 million into escrow; (2) since he arranged for Mighty Argo to deposit the funds with First Title; and (3) since he acted as a conduit between Mighty Argo and the First Title Defendants.

83. Matthiesen failed to disclose the Undisclosed Facts with the intent of creating a false impression of the actual facts in the mind of Mighty Argo. Matthiesen intended to delay or prevent Mighty Argo from recovering its funds. Matthiesen sought to: prevent Mighty Argo from "making problems"; to prevent the Defendants from getting "screwed"; to prevent Matthiesen getting "sued"; and to avoid any "big problems."

84. The Misrepresentations were false. Matthiesen made them to induce Mighty Argo to deposit its funds so the Defendants could steal the funds. He then made additional Misrepresentations to delay and prevent Mighty Argo's pursuit and recovery of the funds.

85. Mighty Argo justifiably relied on Matthiesen's Misrepresentations and justifiably relied on the fact that the Undisclosed Facts did not exist.

86. Mighty Argo's reliance on Matthiesen's representations and non-disclosures damaged Mighty Argo in an amount to be proven at trial.

87. Matthiesen personally and individually acted, perpetuated, and benefited from his fraudulent actions and non-disclosure. He is liable without any veil piercing analysis.

88. Nonetheless, Trivecta, Trivecta, LLC, and Mint are the alter ego of Matthiesen. Matthiesen used these entities as mere instrumentalities to perpetuate the fraud. There is a unity of interest in ownership such that the separate personalities of these entities and Matthiesen no longer exists. Matthiesen directed money allegedly belonging to Trivecta, to Trivecta LLC, and then transferred funds to Mint, his wife, and his business partners. Matthiesen also allocated Mighty Argo's funds for non-business purposes. Disregarding the corporate form would achieve an equitable result.

## IX. EIGTH CLAIM FOR RELIEF
### Civil Conspiracy
**Against Jay Matthiesen, Trivecta Capital Group, Inc., Trivecta Capital Group, LLC, First Title, Inc., Chrisheena McGee, and Sandra Bacon.**

89. All of the previous allegations are incorporated as if fully set forth herein.

90. Matthiesen, Trivecta, Trivecta, LLC, First Title, McGee, and Bacon had a meeting of the minds and willfully conspired to engage in a scheme to defraud Mighty Argo out of some or all of $4.5 million.

91. These defendants committed and caused to be committed one or more overt and unlawful acts in furtherance of the conspiracy, including but are not limited to:

   i. Inducing Mighty Argo to deposit $4.5 million into escrow with First Title;

   ii. Stealing and transferring most of Mighty Argo's $4.5 million out of the escrow accounts;

   iii. Stealing and transferring $150,000 to Trivecta LLC;

   iv. Using some of the $4.5 million for their own personal benefit;

   v. Concealing the location of Mighty Argo's funds;

   vi. Pushing back the closing date to allow these defendants more time to conceal the funds;

   vii. Altering a Wells Fargo Bank Statement to show proof of funds and sending the altered bank statement to Mighty Argo to delay and prevent Mighty Argo's recovery; and

   viii. Concealing or failing to disclose the Undisclosed Facts detailed in paragraphs 41-80.

92. As a direct and proximate result of Defendants' conspiracy to commit fraud, Mighty Argo suffered damages in an amount to be determined at trail.

93. Defendants are jointly and severally liable for Mighty Argo's losses.

### XI. NINTH CLAIM FOR RELIEF
**Unjust Enrichment**
**Against Jay Matthiesen, Trivecta Capital Group, LLC, and Mint Interest Group LLC**

94. All of the previous allegations are incorporated as if fully set forth herein.

95. Matthiesen, Trivecta LLC, and Mint received a benefit at Mighty Argo's expense by improperly obtaining money belonging to Mighty Argo.

96. On August 8, 2020, Matthiesen requested $150,000 from McGee relating to Mighty Argo's funds. As detailed above, this request was improper under the undisclosed CFA and the Escrow Agreement.

97. Matthiesen instructed McGee to wire the funds to Trivecta, LLC.

98. On October 21, 2020, the First Title Defendants transferred $150,000 of Mighty Argo's funds to Trivecta LLC.

99. Through a series of undisclosed transfers, the funds were used for Matthiesen's personal benefit, and disbursed to Matthiesen's business partners, his wife, and Mint.

100. Matthiesen, Trivecta, LLC, and Mint realized the benefits conferred upon them by using, spending, or transferring the funds.

101. Matthiesen, Trivecta, LLC and Mint accepted benefits under such circumstances that it would be inequitable for them to retain without compensating Mighty Argo for the funds received.

102. Mighty Argo has been damaged by Matthiesen's, Trivecta, LLC's, and Mint's failure to pay for the benefits that they accepted in an amount to be proven at trial.

### XII. TENTH CLAIM FOR RELIEF
### Civil Theft
### Against Jay Matthiesen

103. All of the previous allegations are incorporated as if fully set forth herein.

104. Pursuant to C.R.S. §18-4-401, a person commits theft when they knowingly obtain, retain, or exercise control over anything of value of another without authorization and intend to deprive the other person permanently of the use or benefit of the thing of value.

105.     Matthiesen knowingly obtained, retained, or exercised control over approximately $150,000 belonging to Mighty Argo without authorization or by deception, as detailed above.

106.     Matthiesen intended to permanently deprive Mighty Argo of the $150,000. Matthiesen directed the transfer and re-transfer of the funds. He converted the funds his personal use. He transferred funds to his wife and business partners. He concealed the location of the funds and misled Mighty Argo to believe its money was safe in escrow.

107.     Matthiesen acted with knowledge for his own benefit, and thus perpetrated a civil theft. Mighty Argo suffered damages in an amount to be proven at trial as a direct and proximate result of Matthiesen's theft.

**WHEREFORE**, Plaintiff prays this Honorable Court will enter judgment in its favor and against the Defendants on the claims set forth above, to award compensatory damages, punitive damages, treble damages, attorney's fees and costs, and such other and further relief as the court shall deem just and proper.

Respectfully submitted this 15th day of March 2022.

**ROBINSON WATERS & O'DORISIO, P.C.**

*/s/Anthony L. Leffert*
Anthony L. Leffert, #12375
Nicholas F. Labor, #48687
1099 18th Street, Suite 2600
Denver, CO 80202
(303) 297-2600
(303) 297-2750 (f)
aleffert@rwolaw.com
nlabor@rwolaw.com
*Attorneys for Plaintiff*

Plaintiff's Address:
1431 Miner Street
Idaho Springs, CO 80452

## Verification

STATE OF COLORADO        )
                         )
~~CITY AND~~ COUNTY OF Clear Creek )

I, _____ verify that the foregoing is true and correct to the best of my knowledge and belief.

                                                      MARY JANE LOEVLIE
                                                     Printed:
                                                     On behalf of Mighty Argo Cable Car, LLC

Acknowledged, subscribed, and sworn to before me this 15th day of March 2022.

9-28-24
My commission expires

Notary Public

```
JHARI L. SANDER
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20004028624
MY COMMISSION EXPIRES 09/28/2024
```