IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-01106-RMR-NRN

MIGHTY ARGO CABLE CAR, LLC, a Colorado limited liability company,

Plaintiff,

v.

TRIVECTA CAPITAL GROUP, INC.; ARGO MILL SL LLC; JAY MATTHIESEN, an individual; TRIVECTA CAPITAL GROUP, LLC; MINT INTEREST GROUP, LLC; FIRST TITLE, INC.; SANDRA BACON, an individual; CHRISHEENA SHANTE McGEE a.k.a. CHRISTINA MARIUS, an individual;

Defendants.

**ORDER ON DEFENDANT JAY MATTHIESEN'S MOTION TO AMEND SCHEDULING ORDER TO EXTEND DEADLINES (Dkt. #98)**

Entered by Magistrate Judge N. Reid Neureiter

This matter is before me on Defendant Jay Matthiesen's Motion to Amend Scheduling Order to Extend Deadlines (Dkt. #98), referred by Judge Regina M. Rodriguez (Dkt. #99).

Plaintiff filed its opposition to the motion of September 19, 2022. Dkt. #104. I heard argument on the Motion on September 21, 2022. For the reasons outlined below, the Motion will be **DENIED**.

## Background

This is a suit brought by Mighty Argo Cable Car, LLC ("Plaintiff"), which is a company formed to construct a tourist cable car above the Mighty Argo Mill in Idaho Springs, Colorado. The members of the Plaintiff are individual investors who invested more than $4 million into the project. Defendant Jay Matthiesen ("Mr. Matthiesen") is an individual residing in Dallas, Texas. Mr. Matthiesen and his company, Trivecta Captial

1

Group Inc. ("Trivecta"), represented to the Plaintiff that if Plaintiff were able to raise $4.5 million, Trivecta or one of its affiliates would be able to raise and loan more than $32.3 million necessary to complete the cable car project.

Plaintiff was to deposit $4.5 million into an escrow account with defendant First Title. Trivecta was then to deposit the $32.3 million loan funds into the escrow account, which was to be used for construction of the gondola. Dkt. #65 (Second Amended Complaint) at ¶ 13. Plaintiff deposited the $4.5 million into the escrow account as expected. But Trivecta failed to deposit the $32.3 million as required. Once it was clear that the $32.3 million was not forthcoming, Plaintiff sent a demand for immediate release of the escrowed $4.5 million in funds. The money was not released from escrow. In fact, Plaintiff later learned that most of the "escrowed" money had been transferred out, without authorization, almost immediately after deposit. At least $150,000 of this money went directly to Mr. Matthiesen or his company. It is alleged that tens of thousands of dollars of these funds were transferred to Mr. Matthiesen's wife and were used for work done on Mr. Matthiesen's house.

Plaintiff has brought various claims for breach of contract, promissory estoppel, unjust enrichment, and fraud against Trivecta Capital Group, Inc., Trivecta Capital Group, LLC, Mint Interest Group, LLC, the escrow company First Title, individuals associated with First Title (Chrisheena Shante McGee and Sandra Bacon), and also against Mr. Matthiesen.

On September 9, 2022, this Court recommended that a default judgment of approximately $4.88 million be entered jointly and severally against Defendants Trivecta Capital Group, Inc. and Argo Mill SL, LLC. *See* Dkt. #100 (Report and Recommendation). I also recommended that a default judgment of $168,801.64 be

entered jointly and severally against Trivecta Capital Group, LLC and Mint Interest Group, LLC. *Id*. That recommendation was adopted by Judge Rodriguez on September 23, 2022. *See* Dkt. #106. Final judgment was entered on the claims addressed in the recommendation on the same day. *See* Dkt. #107.

Additionally, on August 30, 2022, Judge Rodriguez granted Plaintiff's Motion for Partial Summary Judgment against Defendants First Title, Inc., Sandra Bacon, and Chrisheena McGee, awarding approximately $4.36 million jointly and severally in actual damages for fraud and the same amount in punitive damages. *See* Dkt. #96. Defendants First Title, Bacon, and McGee initially appeared in this case but never responded to Plaintiff's motion for summary judgment.

The bottom line is that judgment has been entered against all defendants except Mr. Matthiesen. Mr. Matthiesen is the only defendant who has appeared and continued to actively defend the case. Mr. Matthiesen answered the Second Amended Complaint on May 5, 2022. *See* Dkt. #71. He filed his answer and affirmative defenses purportedly pro se. In reality, however, Mr. Matthiesen had paid a lawyer to ghostwrite his answer, and then filed it as if he were a pro se litigant. *See* Dkt. #71 at 42.

Mr. Matthiesen appeared at a telephonic status conference on May 17, 2022. At that time, he told the Court he was actively seeking representation and would have an attorney on board within 30 days. At that status conference, Plaintiff's counsel indicated that Plaintiff would oppose any future requests for extensions of the scheduling order deadlines. Further, the Court also noted that even if an attorney later entered her appearance on Mr. Matthiesen's behalf and wanted to amend the scheduling order, the Court would not be overly enthusiastic about granting any extensions of time.

Contrary to his representation, Mr. Matthiesen did not have an attorney enter an appearance on his behalf within 30 days.

After an extensive delay prompted by Mr. Matthiesen's promise to obtain counsel, Plaintiff finally noticed his deposition. On receiving the deposition notice, Mr. Matthiesen (again purportedly pro se), filed a Motion for a Protective Order to keep from having to attend his deposition. See Dkt. #80 at 9 ("I am a defendant in the above-titled and numbered case currently pending in your court. I am not currently represented by counsel and thus am appearing in this case pro se."). In fact, this motion for protective order, which contained extensive legal argument and citation to numerous legal authorities, including the Rules of Civil Procedure and at least ten cases, was again ghostwritten for him by a lawyer, Ms. Christine Cole Biederman. This was not disclosed to the Court at the time. The Court denied the protective order and ordered Mr. Matthiesen to appear for a deposition within ten days. To accommodate the additional time needed to take the deposition, at the Parties' joint request, I extended the discovery deadline in the case to August 31, 2022. See Dkt. #88.

**Motion to Amend the Scheduling Order**

On August 25, 2022, Ms. Biederman formally entered her appearance in the case on behalf of Mr. Matthiesen. See Dkt. #95. And on August 31, 2022, which was the (already extended) discovery cutoff date, Ms. Biederman, on behalf of Mr. Matthiesen, filed a motion to amend the Scheduling Order. See Dkt. #98.

The Motion asks that the schedule be amended as follows:

1. Designation of Experts from May 24, 2022 to September 30, 2022;
2. Designation of Rebuttal Experts from July 5, 2022 to November 1, 2022;

3. Expert Witness disclosures under Rule 26 (a)(2) from March 25, 2022 to October 15, 2022;

4. Rebuttal Expert disclosures under Rule 26 (a)(2) from May 6, 2022 to November 1, 2022;

5. Discovery Cutoff from August 31, 2022 to November 30, 2022; and

6. Dispositive Motions from August 30, 2022 to November 30, 2022.

As a basis for the extension of time, Mr. Matthiesen claims that he has been representing himself pro se since March of 2022, and "has not had a fair opportunity to engage in discovery on his own behalf [. . . .]". Dkt. #98 at 4–5. Mr. Matthiesen claims that he is "not a wealthy man" and that "[e]ven without the benefit of counsel, he has tried diligently to do what has been required of him in this litigation," including filing an answer to the Second Amended Complaint, participating in a status conference, responding to Plaintiff's discovery requests, negotiating a deposition date and presenting himself for a deposition. Mr. Matthiesen also claims that "at the time most of the current scheduling order deadlines passed, Mr. Matthiesen was without counsel and thus *had no idea that he needed to conduct his own discovery or even to seek to amend court's scheduling deadlines*." Dkt. #98 at 8 (emphasis added). He also says he had "*no clue what needs to be done to prepare a case such as this for trial*." *Id.* (emphasis added).

Mr. Matthiesen's argues in favor of reopening discovery is that he "has had no realistic and meaningful opportunity to comply with various scheduling order deadlines in this matter, and fundamental fairness demands that he be given the opportunity to conduct at least some bare-bones discovery in order to defend himself and his

5

reputation from the vague and scandalous allegations scattered throughout the Plaintiff's SAC." Dkt. #98 at 7.

Mr. Matthiesen finally argues that the expert disclosure deadline should be extended because he needs to disclose an expert on "hard money" lending, "to explain the various steps and standards involved in making those loans." *Id*. at 7.

### Plaintiff's Opposition to the Motion to Amend

Plaintiff opposes any extensions of the discovery deadlines. Plaintiff points out that five of the six deadlines Mr. Matthiesen seeks to extend had already passed at the time of the requested extension, and thus the motion is governed by the "excusable neglect" and not the "good cause" standard urged by Mr. Matthiesen.[1] In addition, Plaintiff argues that Mr. Matthiesen *has* had the assistance of counsel. Plaintiff provides evidence that Mr. Matthiesen was in communication with Ms. Biederman as early as April 14, 2022.

In addition, Plaintiff argues that it will be prejudiced by the requested extensions of time. The request 30-90 day extensions will significantly delay the proceedings. According to the Plaintiff, Matthiesen "seeks to essentially restart the discovery process with little thought to the impact of the judicial proceeding or Mighty Argo." Dkt. #104 at 7.

---

[1] In fact, nearly *all* the deadlines Mr. Matthiesen seeks to extend have effectively passed. If Mr. Matthiesen wanted to conduct written discovery via interrogatories or requests for production of documents, that deadline passed 45 days prior to the August 31, 2022, discovery deadline. *See* Dkt. #40 at 8 ("Deadline for service of Interrogatories, Requests for Production of Documents and/or Admissions: September 15, 2021. 45 days prior to the close of discovery."). The only type of discovery deadline that had not passed as of the August 31, 2022 request for extension was the deadline for taking depositions.

**Standard for Granting Modifications of the Scheduling Order**

Scheduling orders are contemplated and designed to offer a degree of certainty in pretrial proceedings, ensuring at some point that the claims and evidence are fixed so that parties may proceed to trial. *See Home Design Servs., Inc. v. Trumble*, No. 09-cv-00964-WYD-CBS, 2010 WL 1435382, *6 (D. Colo. Apr. 9, 2010). They are not "optional deadlines that can simply be ignored or amended on a whim." *Dedmon v. Continental Airlines, Inc.*, 13-cv-0005-WJM-NYW, 2015 WL 4639737 (D. Colo. Aug. 8, 2015).

Rule 16(b) provides that a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "In practice, this standard requires the movant to show the 'scheduling deadlines cannot be met despite [the movant's] diligent efforts.'" *Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014) (citing *Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001)). This burden is satisfied, for example, when a party learns of new information in a deposition or that the governing law has changed. *Id*. Rule 16(b) does not focus on the bad faith of the movant, or the prejudice to the opposing party. Rather, it focuses on the diligence of the party seeking leave to modify the scheduling order. *Colo. Visionary Acad. v. Medtronic, Inc.*, 194 F.R.D. 684, 687 (D. Colo. 2000). The party seeking an extension is normally expected to show at least good faith on its part and some reasonable basis for not meeting the deadline. *Deghand v. Wal-Mart Stores, Inc.*, 904 F. Supp. 1218, 1221 (D. Kan. 1995).

In addition, to the extent that Mr. Mattheisen seeks to modify the scheduling order to reopen discovery, The Tenth Circuit has identified several factors relevant to the decision to re-open discovery:

> 1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence.

*SIL-FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1514 (10th Cir. 1990).

In this case, these factors do not favor modifying the scheduling order to allow for Mr. Matthiesen to conduct discovery.

As an initial matter, even if Mr. Matthiesen were truly pro se in this case, a party's "pro se status, does not excuse the obligation of any litigant to comply with the fundamental requirements of the Federal Rules of Civil and Appellate Procedure." *Ogden v. San Juan Cnty*, 32 F.3d 452, 455 (10th Cir. 1994); *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (explaining that pro se parties "follow the same rules of procedure that govern other litigants").

Second, I find Mr. Matthiesen's claims of ignorance about the need to conduct his own discovery to be implausible. Both he and his companies have had the benefit of counsel over the course of this litigation, whether through formal representation or on a pay-by-the hour basis. Prior to Mr. Matthiesen being sued personally, his companies were represented by counsel. And although he claimed to be pro se, after questioning by the Court at the September 21, 2022 hearing, Ms. Biederman acknowledged that she had ghostwritten Mr. Matthiesen's answer and protective order, as well as his responses to discovery. She ghostwrote those legal filings while being paid by the hour. She had not revealed her ghostwriting to the Court, saying that she was unaware of the requirements of the Tenth Circuit to disclose attorney ghostwriting for a nominally pro se party. Whether aware of Tenth Circuit precedent or not, it should be obvious to a lawyer

that ghostwriting a brief for a nominally pro se plaintiff and allowing the plaintiff to then suggest to the Court that he has not had assistance of a lawyer in the litigation borders on perpetrating a fraud on the court.

I provide an extensive excerpt from a Tenth Circuit decision addressing the impropriety of an attorney ghostwriting briefs for a pro se party without disclosing the attorney's involvement:

> This court is concerned with attorneys who "author[ ] pleadings and necessarily guide[ ] the course of the litigation with an unseen hand." *Johnson v. Bd. of Cnty. Comm'rs*, 868 F. Supp. 1226, 1231 (D.Colo.1994). Fed. R. Civ. P. 11(a) requires that "[e]very pleading, written motion, and other paper shall be signed by at least one attorney of record in the attorney's individual name, or if the party is not represented by an attorney, shall be signed by the party." [Attorney] Snow's actions in providing substantial legal assistance to Mr. Duran without entering an appearance in this case not only affords Mr. Duran the benefit of this court's liberal construction of pro se pleadings, *see Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972), but also inappropriately shields Mr. Snow from responsibility and accountability for his actions and counsel.
>
> As stated in a recent law review article:
>
> The duty of candor toward the court mandated by Model Rule 3.3 is particularly significant to ghostwritten pleadings. If neither a ghostwriting attorney nor her pro se litigant client disclose the fact that any pleadings ostensibly filed by a self-represented litigant were actually drafted by the attorney, this could itself violate the duty of candor. The practice of undisclosed ghostwriting might be particularly problematic in light of the special leniency afforded pro se pleadings in the courts. This leniency is designed to compensate for pro se litigants' lack of legal assistance. Thus, if courts mistakenly believe that the ghostwritten pleading was drafted without legal assistance, they might apply an unwarranted degree of leniency to a pleading that was actually drafted with the assistance of counsel. This situation might create confusion for the court and unfairness toward opposing parties. It is therefore likely that the failure to disclose ghostwriting assistance to courts and opposing parties amounts to a failure to "disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client," which is prohibited by Model Rule 3.3. Undisclosed ghostwriting would also likely qualify as professional misconduct under Model Rules 8.4(c) and (d), prohibiting conduct involving a

> misrepresentation, and conduct that is prejudicial to the administration of justice, respectively.
>
> John C. Rothermich, *Ethical and Procedural Implications of "Ghostwriting" for Pro Se Litigants: Toward Increased Access to Civil Justice*, 67 Fordham L. Rev. 2687, 2697 (1999) (citing Model Rules of Prof'l Conduct R 3.3(a)(2)) (footnotes omitted).
>
> . . . .
>
> Competence requires that a lawyer conduct a reasonable inquiry and determine that a filed pleading is not presented for an improper purpose, the positions taken are nonfrivolous, and the facts presented are well grounded. Fed. R. Civ. P. 11(b). Ethics requires that a lawyer acknowledge the giving of his advice by the signing of his name. Besides the imprimatur of professional competence such a signature carries, its absence requires us to construe matters differently for the litigant, as we give pro se litigants liberal treatment, precisely because they do not have lawyers. *See Haines*, 404 U.S. at 520–21, 92 S. Ct. 594.
>
> We determine that the situation as presented here constitutes a misrepresentation to this court by litigant and attorney. *See Johnson*, 868 F. Supp. at 1231–32 (strongly condemning the practice of ghost writing as in violation of Fed. R. Civ. P. 11 and ABA Model Code of Professional Responsibility DR 1–102(A)(4)). Other jurisdictions have similarly condemned the practice of ghost writing pleadings. *See, e.g., Ellis v. Maine*, 448 F. 2d 1325, 1328 (1st Cir.1971) (finding that a brief, "prepared in any substantial part by a member of the bar," must be signed by him); *Ostrovsky v. Monroe (In re Ellingson)*, 230 B.R. 426, 435 (Bankr. D. Mont. 1999) (finding "[g]host writing" in violation of court rules and ABA ethics); *Wesley v. Don Stein Buick, Inc.*, 987 F. Supp. 884, 885–86 (D. Kan. 1997) (expressing legal and ethical concerns regarding the ghost writing of pleadings by attorneys); *Laremont-Lopez v. Southeastern Tidewater Opportunity Ctr.*, 968 F. Supp. 1075, 1077 (E.D. Va.1997) (finding it "improper for lawyers to draft or assist in drafting complaints or other documents submitted to the Court on behalf of litigants designated as pro se"); *United States v. Eleven Vehicles*, 966 F. Supp. 361, 367 (E.D. Pa. 1997) (finding that ghost writing by attorney for pro se litigant implicates attorney's duty of candor to the court, interferes with the court's ability to supervise the litigation, and misrepresents the litigant's right to more liberal construction as a pro se litigant).

*Duran v. Carris*, 238 F.3d 1268, 1271–1273 (10th Cir. 2001). This concern is recognized beyond the Tenth Circuit. Indeed, citing the *Duran* case, the Northern District of Texas has specifically commented on the impropriety of lawyers ghostwriting court filings for

nominally unrepresented parties. *See, e.g., Garcia v. Jenkins/Babb LLP*, No. 3:11-CV-3171-N-BH, 2012 WL 3846539 (N.D. Tex., Sept. 5, 2012) (allowing discovery into whether ostensibly pro se Plaintiffs "have obtained the assistance of any undisclosed attorney so the Court can determine what actions should be taken regarding that").

So, Mr. Matthiesen was filing pleadings and other documents claiming to be *pro se*, all while being assisted by sophisticated counsel and not disclosing that his pleadings were being ghostwritten. Beyond the failure to disclose substantial attorney involvement in the case is the difficult-to-believe suggestion that Mr. Matthiesen did not know that he was entitled to conduct discovery on his own behalf, or even to ask for extensions of time. Mr. Matthiesen was answering discovery issued by his opposing side and doing so with the assistance of counsel. Under these circumstances, it is not credible to suggest that Mr. Matthiesen did not know or could not have known that he had the ability to conduct some discovery in his own defense. Either the lawyers representing his former companies or the lawyer preparing his answer and his responses to discovery almost certainly would have told him about his options in defending the case. Mr. Matthiesen provided no affidavit or other sworn document that would provide evidence of his supposed ignorance.

Applying the Tenth Circuit factors to be considered in deciding whether to reopen discovery, leads me to conclude that the discovery deadlines should not be extended. It is true that trial is not imminent. But the way this District usually works is that trial dates are not set until discovery is completed. Here, reopening discovery and extending the discovery deadline will unnecessarily further delay the setting of a trial date.

11

The request is opposed and the non-moving party, Mighty Argo, will be unfairly prejudiced. It is undisputed that this case involves the disappearance of more than $4 million in investor funds. Plaintiff Mighty Argo has obtained judgments against certain defendants in the case. Mr. Matthiesen had every opportunity to participate meaningfully during the discovery process. He could have hired a lawyer to write interrogatories or requests for production for him, just as he did to respond to discovery. He chose not to, and instead asks the Court to essentially restart the discovery process. This is not fair to a plaintiff that has diligently pursued this case from the beginning. Allowing Mr. Matthiesen to designate an expert at this late time would be especially prejudicial. Mighty Argo has not designated any affirmative expert witness. Allowing Mr. Matthiesen to designate an expert likely would require that Mighty Argo identify, retain and designate a rebuttal expert, after a time when Mighty Argo believed no experts would be necessary. Mr. Mattiesen will be free at trial to explain to the jury the complexities of "hard money lending."

In terms of the foreseeability of the need for additional discovery in light of the existing schedule, I made clear a number of months ago that I was not inclined to allow additional time for discovery. Finally, it is not clear that discovery will lead to relevant evidence. Plaintiff's counsel says that there are a number of allegations in the Amended Complaint, the source of which Mr. Matthiesen has no knowledge. Mr. Matthiesen knows the extent of his own involvement (if any) in the alleged scheme to defraud the Might Argo investors of their funds. Any documents supporting Plaintiff's case will have to have been disclosed in connection with Plaintiff's Rule 26 disclosures. It is not apparent that Mr. Matthiesen will be unfairly prevented from defending himself in this case.

For the foregoing reasons, Defendant Matthiessen's Motion to extend discovery deadlines and reopen discovery is **DENIED.**

Date: October 4, 2022

                                                                                                 _____
                                                                                                 N. Reid Neureiter
                                                                                                 United States Magistrate Judge